# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:17-CR-514-T-27TGW

EULALIO HERNANDEZ ANAYA
_____/

## SENTENCING MEMORANDUM

The Defendant, Mr. Eulalio Hernandez Anaya ("Mr. Hernandez Anaya"), by and through his undersigned attorney, Mr. Adam J. Nate, pursuant to 18 U.S.C. §§ 3553 and 3551, files this Sentencing Memorandum in support of his request for a reasonable sentence that is not greater than necessary to satisfy the statutory purposes of sentencing enumerated in 18 U.S.C. § 3553. Toward that end, Mr. Hernandez Anaya respectfully requests a prison sentence of 132 months, followed by a 5-year term of supervised release.

Mr. Hernandez Anaya will appear before this Honorable Court on June 21, 2018, and will be sentenced for conspiring to possess, and possessing, five kilograms or more of cocaine with the intent to distribute, all in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), 21 U.S.C. § 960(b)(1)(B)(ii), and 18 U.S.C. § 2. Mr. Hernandez Anaya's history and characteristics are set out in Part C of the Presentence Report ("PSR"), and his background indicates he is not a threat to the public, and there is little risk he will commit future crimes. 18 U.S.C. §

1

3553(a)(2)(C). Mr. Hernandez Anaya has no criminal history, no history of mental or emotional difficulties, and no history of substance abuse. PSR ¶¶ 28 – 34, 51 – 54. He graduated high school in 1986, and earns a living working as a chef at a seafood restaurant. PSR ¶¶ 55 and 57. Each of these facts demonstrate Mr. Hernandez Anaya is not a future danger to society, and to the extent he could be considered a danger, the requested sentence adequately safeguards American citizens from additional lawbreaking.

The Court is required to impose a sentence that "afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The requested sentence of 132 months will, without question, specifically deter Mr. Hernandez Anaya. The lengthy time in prison will incapacitate him and prevent him from committing other crimes, in addition to discouraging him from committing future illegal acts by instilling in him a deep understanding of the penalties. A prison sentence of the length requested could also act as a general deterrence to other people considering similar conduct, as more than a decade in prison for a first-time offender undoubtedly "reflects the seriousness of the offense" and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Thus, all of the statutory factors the Court must consider are sufficiently reflected and accounted for in the requested sentence.

Along with considering the 18 U.S.C. § 3553 factors, the Court must consider Mr. Hernandez Anaya's objection to the PSR's 2-level enhancement to his base offense level pursuant to United States Sentencing Guidelines ("USSG") § 2D1.1(b)(3)(C). That section of the USSG recommends an enhancement if a defendant "acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance." Id. The Eleventh Circuit, along with at least two other circuits, has declined to embrace and apply a consistent definition of the term "captain." Instead, it calls for district courts to conduct an inquiry into the facts of each case, and after such an inquiry apply a "functional definition" of the term "captain." *United States v. Cartwright*, 413 F.3d 1295, 1298 (11th Cir. 2005); *See also United States v. Senn,* 129 F.3d 886, 896-97 (7th Cir. 1997), and *United States v. Guerrero,* 114 F.3d 332, 346 (1st Cir. 1997).

In *Cartwright*, the Eleventh Circuit upheld the captain enhancement where the defendant (1) disclosed he was a lifelong fisherman, (2) admitted he was driving the boat when the Coast Guard boarded it, (3) followed instructions from other shipmates on where to steer the boat, and (4) used a compass to navigate the boat. *Cartwright*, 413 F.3d at 1299. The fact the defendant "was not officially named the captain or pilot [was] not dispositive." *Id*.

In *United States v. Rendon*, 354 F.3d 1320, 1329 (11th Cir. 2003), the captain enhancement was found applicable even though the defendant was not listed as the captain on the ship's manifest. The defendant in *Rendon* (1) identified himself to the Coast Guard as captain, (2) admitted he navigated the boat, (3) was apparently the only crewmember with knowledge of the ship's course, (4) had hired the crew, and (5) directed the crew's operations onboard the vessel. *See also United States v. Hernandez*, 864 F.3d 1292 (11th Cir. 2017) (the evidence established the defendant acted as the captain of the vessel containing a controlled substance; the defendant identified himself as the captain when the Coast Guard boarded the vessel, he held a captain's license in Guatemala, and a co-defendant later confirmed the defendant was the ship's captain).

In this case, Mr. Hernandez Anaya did not identify himself as the captain when USCG BM1 Stephen S. Mattke first questioned Mr. Hernandez Anaya and his co-defendants. The following is how BM1 Mattke characterized the exchange:

> All 6 crewmembers were placed in Type I personal flotation devices . . . . I utilized the translator to help me determine the master or person in charge (PIC), and the nationality of the vessel . . . At 2235L Officer Rosa-Perez, the translator, embarked the vessel. I asked my Victor report questions through him to all 6 persons on the vessel. I had the translator ask each person individually if they were the master or the person in charge all 6 answered no to this question.

Petty Officer Pablo Rosa-Perez, who acted as a Spanish translator, stated the following:

> When I came onboard the vessel I observed there were six persons onboard . . . I proceeded to translate for the boarding officer, Officer Mattke, and spoke to the persons onboard the vessel. I was requested to translate questions from a Victor report to identify the nationality of the vessel, people, and who the master of the vessel or person in charge was. I asked each person if they were the master or the person in charge, all 6 of the crewmembers answered no to this question.

In addition to never identifying himself as the captain, Mr. Hernandez Anaya never admitted he was driving, steering, or navigating the boat. There is no evidence he had a captains license, and he never made admissions related to hiring other crewmembers or directing the crew's operations onboard the vessel.

The United States will likely seek to introduce a statement made by co-defendant Freddy Javier Avila Lopez ("Lopez") during his recent debriefing with law enforcement officers. Lopez asserts Mr. Hernandez Anaya was the captain and that he was driving the vessel when crewmembers recognized the United States Coast Guard ships nearby. Lopez's testimony is not reliable or credible, and there is a lack of corroborating evidence, independent of Lopez's claim, for the Court to find Mr. Hernandez Anaya was the captain.

Lopez, an Ecuadorian national, had only recently met Mr. Hernandez Anaya and two other Mexican nationals under relatively harsh conditions at sea that included exposure to the fumes of spilled gasoline. The short duration of Lopez's

observations, as well as his inability to maintain attention and focus, relate directly to his alleged memory of past events, rendering his recent statements unreliable. Even more, Lopez formed his memories when he was under stress and fear due to his illegally trafficking cocaine, trying to flee from the United States Coast Guard, and then attempting to dispose of the evidence of his illicit trafficking by throwing the cocaine overboard, factors that adversely affect the accuracy of his recollection.

Finally, the Court should find Lopez's statements unreliable given the timing and circumstances he made them. Lopez asserted Mr. Hernandez Anaya was the captain for the first time on June 7, 2018, in the atmosphere of cooperation with the United States as his sentencing date approached. Just as important, Lopez never identified Mr. Hernandez Anaya as the captain to the United States prior to June 7, 2018, when he had multiple opportunities to do so. The timing of Lopez's statements and the setting in which he made them should lead the Court to find his assertions untrustworthy.

Mr. Hernandez Anaya objects to the PSR's 2-level enhancement to his base offense level pursuant to USSG § 2D1.1(b)(3)(C), and given the evidence, lack of evidence, and conflicts in the evidence, the Court should sustain Mr. Hernandez Anaya's objection.

**WHEREFORE**, Mr. Hernandez Anaya respectfully requests a prison sentence of 132 months, followed by a 5-year term of supervised release.

Mr. Hernandez Anaya also requests this Court make the following recommendations as part of his sentence:

1) Recommend Mr. Hernandez Anaya be housed at either FCI – Fort Dix or FCC – Coleman;

2) Recommend Mr. Hernandez Anaya be allowed to work and participate in the UNICOR Program if he fulfills the programs eligibility requirements; and

3) Recommend Mr. Hernandez Anaya learn a vocational trade and take English classes.

DATED this 20th day of June, 2018.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

**/s/ *Adam J. Nate***

Adam J. Nate
Florida State Bar No. 0077004
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida  33602
Telephone:  813-228-2715
Fax:            813-228-2562
Email:         Adam_Nate@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of June, 2018, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to:

Ms. Rebecca Castaneda, Assistant United States Attorney

/s/ *Adam J. Nate*

Adam J. Nate
Assistant Federal Defender